# STATE OF MICHIGAN

# COURT OF APPEALS

In re JOHNSON, Minors.

UNPUBLISHED
September 13, 2018

No. 341962
Wayne Circuit Court
Family Division
LC No. 17-000825-NA

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(b)(*i*), (*ii*), (g), (j), (k)(*iii*), (*iv*), and (*v*).[1] We affirm.

## I. BACKGROUND

Respondent is the biological mother of two children, AJJ and DAJ. At all times relevant to this appeal, respondent and her children lived in a single home with many of their relatives. Although the number of residents in the home fluctuated, a total of five adults and five children cohabited the home at the time of the children's removal. Respondent's niece, Jade Henderson and Henderson's children, IMP, PIP, and KCP (an 11-month-old infant boy), lived with respondent at all times relevant to this appeal and respondent and Henderson would often watch each other's children. In 2015, Henderson left her child, PIP, in respondent's care. While in respondent's care, the child stopped breathing and was rushed to the hospital. Child Protective Services (CPS) investigated the incident, as well as allegations of drug paraphernalia in the home, but did not substantiate the allegations.

Two years later, Henderson again left her children in the care of respondent while she attended a work training. Aaron Griffin, KCP's uncle, was also present at the time, having just been released from jail. When Henderson returned from her training, she found KCP on the front porch in a car seat. When Henderson took KCP inside, the child made a gasping sound, indicating that he was having trouble breathing. Henderson took KCP to the hospital where he was found to have a perforated bowel, an odd-shaped bite mark, and several skull fractures

---

[1] MCL 712A.19b was amended effective June 12, 2018. See 2018 PA 58.

-1-

indicating blunt-force trauma to the head. KCP died of his injuries two days later. No adult could explain KCP's injuries, though several were present in the home. While some of the children attempted to take responsibility for KCP's injuries and gave varying explanations for how the injuries occurred, KCP's injuries were inconsistent with the children's explanations. A medical examiner ruled KCP's death a homicide and noted that not all of KCP's injuries took place within the time that Henderson was out of the home, indicating that the abuse had been ongoing.

On the day of KCP's death, petitioner filed an original petition seeking termination of respondent's parental rights to her children. The petition also indicated that respondent tested positive for marijuana that day. The children were removed from respondent's care and placed with a maternal relative. Eventually, the children's placement was transferred to a paternal relative who was ensuring that the children's medical and academic needs were being met. The paternal relative was also willing to provide for the children long term.

Respondent pleaded no contest to an amended petition, stipulating to the trial court's jurisdiction and the statutory grounds supporting termination. Regarding the children's best interests, respondent was evaluated by the Clinic for Child Study. The evaluation determined that respondent and the children were bonded and that respondent was responsive to the children's needs. The evaluation, however, also determined that respondent had unresolved substance-abuse issues and had exercised poor judgment by previously remaining in an abusive relationship. The children's caseworker evaluated respondent's home and testified that the children did not have defined sleeping quarters or proper bedding. Additionally, the children had dental issues and were not reading at the appropriate grade levels while in respondent's care.

The trial court found that termination of respondent's parental rights was in her children's best interests. Although the trial court noted that KCP was not respondent's child, the trial court concluded that respondent's treatment of KCP was probative evidence in a best-interest analysis as to how respondent would treat her own children. The trial court explicitly considered the children's placement with relatives and the bond between respondent and her children, but found that the nonaccidental injuries KCP suffered in respondent's care outweighed those considerations. The trial court found that the children would be at a risk of harm if ever returned to respondent's care and terminated her parental rights to both children.

This appeal followed.

II. ANALYSIS

On appeal, respondent does not argue that statutory grounds did not exist to terminate her parental rights. Rather, respondent argues that termination of her parental rights was not in the children's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (cleaned up).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id.*, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). Other relevant factors include any "history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714. A child's placement with a relative weighs against termination. See *In re Olive/Metts Minors*, 297 Mich App at 42; *In re Mays*, 490 Mich 997; 807 NW2d 304 (2012). Still, the best interests of each individual child ultimately control the trial court's ruling, not the child's placement with relatives or the preference to keep siblings together. *In re Olive/Metts Minors*, 297 Mich App at 42-43; see also *In re White*, 303 Mich App at 715.

*Respondent Was Not Entitled to Reunification Services.* Respondent first argues that termination of her parental rights was improper because she was not offered reunification services. "[W]hen a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). Petitioner has the "responsibility to expend reasonable efforts to provide services to secure reunification." In re *Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). An absence of reasonable efforts to provide services aimed at reunification may render termination premature. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "However, the petitioner is not required to provide reunification services when termination of parental rights is the agency's goal." *In re Moss*, 301 Mich App at 91 (cleaned up). Here, petitioner sought termination in its initial petition and was thus not required to provide respondent with reunification services.

*The Best Interests of the Children Did Not Significantly Differ.* Next, respondent argues that the trial court erred by not making individualized factual findings regarding the children's best interests. While the trial court must consider the best interests of each child individually, *In re Olive/Metts Minors*, 297 Mich App at 42, the trial court is only required to make explicit "factual findings concerning each child's best interests" when "the best interests of the individual children *significantly* differ," *In re White*, 303 Mich App at 715-716. Here, the trial court found that respondent's inattentiveness to the children's needs exposed them to a risk of harm in her care. On appeal, respondent has not provided any argument explaining why the risk of harm was not the same for each child or why the children's best interests otherwise significantly differed. "It is not sufficient for a party simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis of [her] claims, or unravel and elaborate for [her her] arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Accordingly, respondent's claim that the trial court erred by not making individualized factual findings is without merit.

*Termination Was in the Children's Best Interests.* Finally, respondent argues that the trial court erred by failing to consider the children's bond with respondent or the children's placement with a relative. According to respondent, these considerations indicate that she should have been given time to engage in services to reunify with the children.

Contrary to respondent's argument, the trial court did explicitly consider the children's placement with relatives and bond with respondent. Despite these considerations, the trial court concluded that the children would always be at a risk of harm in respondent's care. This conclusion is supported by the record. Twice in a span of only a couple years a child was taken to the hospital with breathing issues while in respondent's care. Regarding the second incident, respondent was left in charge of KCP shortly before his death. While in respondent's care, KCP suffered serious injuries that eventually killed the child. Yet, respondent could offer no explanation as to how the child sustained those injuries. Moreover, respondent could not explain why the child was left unattended on the front porch. Additionally, respondent's own children had dental issues, were struggling academically, and had no defined place to sleep. For her part, respondent suffered from unresolved substance-abuse issues and failed to exercise proper judgment regarding who she brought into her and the children's lives. While the record is unclear as to whether respondent, Griffin, or some third party actually inflicted the abuse upon KCP, the record clearly demonstrates that respondent was unable to supervise the children or protect them from harm. Thus, the trial court did not clearly err by concluding that the children risked harm in respondent's care and that termination of her parental rights was in each child's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

-4-